EMILY M. HAYS, Executrix, and others, *v.* HENRY M. HAYS and others.

, October Term, 1875.

MASTER'S REPORT SHOULD FOLLOW ORDER. — It is the duty of the master to make his report conform to the directions of the decree, and an exception based upon his failure so to do is well taken.

EXECUTORS — LIABILITY FOR EACH OTHER'S ACTS — TRUSTS. — As a general rule, all the executors are held liable for the execution of directory trusts, while each is liable only for his own exercise of discretion where the trusts are discretionary; but, even in the latter class of trusts, an executor who permits another to retain funds for a long time, without seeing to their proper investment, may be held liable for a loss.

EXECUTOR — COMPENSATION — ORDER OF REFERENCE. — Where the parties have agreed to an order of reference to take an administration account, in which the master is directed to allow the executors reasonable compensation, they are estopped to dispute the right to compensation.

*E. H. East*, for complainants.
*Ed. Baxter*, for defendants.
*T. H. Malone*, for executrix.

THE CHANCELLOR : — In the year 1858, O. B. Hays departed this life, in the county of Davidson, leaving a wife and six children, and having made a will, by which he appointed his sons Henry M. Hays and O. B. Hays, Jr., executors. On December 14, 1858, the executors named duly qualified, and, the bill says, "gave their individual bonds, each in the sum of $300,000, no security having been required of them." The language of the decree is, "each gave bond in the sum of $300,000, and undertook to perform the duties of said office." On January 23, 1861, they had a partial settlement before the County Court, in which they were charged with $4,684.70, sale of Haywood County lands, which amount they showed they had paid out to the legatees, as directed by said will, and with $11,484.48, and credited with $5,152.75, properly disbursed, leaving a balance of $6,341.73 in their hands, and other assets, personal and real, to be administered. By his will the testator

charged his estate with an annuity of $500 for his widow, and gave the residuum to certain of his children. O. B. Hays, Jr., died testate, on August 15, 1868, and the widow of O. B. Hays, Sr., has also died. This bill was filed on February 3, 1874, by the executrix, wife, and children of O. B. Hays, Jr., against Henry M. Hays, surviving executor of O. B. Hays, Sr., and the devisees and legatees under the will of O. B. Hayes, Sr., for a settlement of the estate as between the said executors and the devisees and legatees, and also for a settlement between the surviving executor and the estate of the deceased executor. The bill was taken for confessed against all the defendants except the representative of the widow of O. B. Hays, Sr., who answered, and such proceedings were had that, on July 13, 1874, a decree was rendered, reciting the facts as set out in the bill, and declaring " that said executors shall jointly and severally make a final settlement and close up said estate," and directing the master " to take and state an account as between said legatees and said two executors, and also as between said executors, charging said executors with all assets that have or should have legally come to their hands, or to the hands of either, and crediting them with all legal disbursements," allowing them reasonable compensation for their respective services, " and in said account he will state the liabilities of said executors, jointly and severally."

The master has made a report, in which he has taken and stated separate accounts with each executor, and then stated the accounts so as to show the share of each legatee in the balance of estate found due from both.

Three of the residuary legatees file exceptions to this report, the first exception being " that the master has not stated the account jointly, nor charged both of them with the assets which came to the hands of either." The first branch of this exception, which goes to the form of the report, is undoubtedly well taken. The decree does dis-

tinctly direct that an account shall be taken as between the legatees and the executors, charging the latter with all assets that came, or should have come, to their hands, or the hands of either. This was a positive direction, which the master should have obeyed. It is no answer to say that the account is so taken that the result of a joint account can be readily ascertained; for that would be to leave it to the discretion of the clerk whether he will follow the directions of the court or not. His duty in this regard is ministerial. *Maury* v. *Lewis*, 10 Yerg. 115.

The second branch of the exception, — " nor charged both of them with the assets which came to the hands of either,"— so far as it is intended to be a corollary of the first branch, and to insist upon a joint account, is also well taken. But the language used implies something more, and goes upon the idea that the decree determined that both executors were jointly liable for assets which came to the hands of either. The language of the decree is, it must be admitted, equivocal on this point. If the words of the decree embodied, or intended to be referred to, in the exception are alone looked to, the inference drawn would seem to follow. But the decree starts out with declaring " that said executors should jointly and severally make a final settlement," and the final direction to the master on this point is, " and in said account he will state the liabilities of said executors jointly and severally." Both of these clauses would be without meaning unless it was intended by them to distinguish between items on which the executors were to be jointly liable, and items as to which each was severally liable. The decree nowhere undertakes to determine expressly the liability of the executors in this regard. It is an inference of the exceptants, from certain directions as to the mode of stating the account, that both executors were to be jointly charged with all assets. The other side equally infer from the directions that the liabilities are to be stated " jointly and severally,"— which would otherwise

be useless verbiage, the decree also positively directing an account as between said executors, — that the master was to ascertain such joint and several liability. It is true, this would be to require the master, not only to take an account, but to determine the principle of law regulating its statement. This, however, is nothing more than is done in this court every day, upon reference made by the parties, against my repeated protest that no reference should ever be made until the rights of the parties are first ascertained by decree. I cannot shut my eyes to the existence of the usage, however much I may be opposed to its continuance. In this view, I think the decree does not positively settle that both executors were to be held jointly liable for all assets, but that it was intended that the master should undertake (without special directions from the court) to ascertain the items for which they were jointly liable and the items on which they were severally liable. The direction for a joint account, in the first instance, was merely for convenience. The latter branch of the first exception must, therefore, be disallowed.

The main object of this exception was, doubtless, to obtain the benefit of the joint liability, as supposed to be settled by the decree. It may be that, upon the principles regulating the liability of the executors, the present accounts will be found sufficient for practical purposes. If so, the necessity of a re-reference may be obviated.

The liability of executors for each other's acts was fully considered and settled in *Deaderick* v. *Cantrell*, 10 Yerg. 263, and the rulings of that case have been since adhered to. A distinction was there taken between directory and discretionary trusts under a will, and all the executors were held responsible where the trust is directory, because all are bound to see that these directions are faithfully carried out; whereas, in matters of discretion, each is, in general, responsible only for his own exercise of discretion. *Shenck* v. *Shenck*, 1 C. E. Green, 174. If, however, one trustee, even in the case of a discretionary trust, permit another to

retain funds for a long time, without seeing that they are properly invested in accordance with the trust, he will thereby make himself liable for the fund if a loss occur. *Styles* v. *Guy*, 1 Mac. & G. 422; *Sadler* v. *Hobbs*, 2 Bro. C. C. 114; *Clark* v. *Clark*, 8 Paige, 153. The character of the trusts under this will, and the conduct of the executors as trustees, have not been discussed by counsel. It seems to me that the only provision of the will which, in this connection, may be considered as creating a directory trust is that which directs the surplus moneys, after the payment of debts, to be invested " at lawful interest, on unquestionable security, payable semi-annually." All other trusts are discretionary. But the surplus money was loaned to the legatees, and to one Pointer, on notes calling for interest payable semi-annually. It is not claimed that any loss has been sustained by the investment. And if the legatees should be made to pay the notes with interest payable semi-annually, the fund would be immediately returned to them. The legatees are entitled to the Pointer note, with accumulations; and this seems to meet all the requirements of the directory trust. I do not find such neglect during the life of O. B. Hays, Jr., as to charge either executor for the default of the other. The executors gave separate bonds, so that there is no joint liability created by joint bond. *Fulton* v. *Davidson*, 3 Heisk. 629. In this. view, the report of the clerk seems to meet the merits of the case.

The exception touching compensation is disallowed. The decree expressly directs that the executors be allowed reasonable compensation. This decree was made by consent of parties, and was not the act of the court upon a hearing, nor was any question as to the right of compensation reserved. Five per cent on the gross amounts, instead of five per cent at the end of the two years of administration, and annually on collections afterwards, is entirely reasonable, if " reasonable compensation " is to be allowed. I express no opinion whether this allowance was proper.